BETHESDA FOUNDATION OF NEBRASKA and MTC West, Inc., d/b/a Bethesda Care Centers, d/b/a Bethany Care Center, Petitioners,

v.

COLORADO DEPARTMENT OF SOCIAL SERVICES; Karen Beye, in her official capacity as Acting Director of the Department of Social Services; Colorado State Board of Social Services; Colorado Department of Administration; and the State of Colorado, Respondents.

No. 93SC385.

Supreme Court of Colorado, En Banc.

July 11, 1994.

Miles & Epstein, P.C., Frederick Miles, Nancy P. Tisdall, Denver, for petitioners.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., Wade Livingston, First Asst. Atty. Gen., Human Resources Section, Denver, for respondents.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review the decision in *Bethesda Foundation of Neb. v. Colorado Dep't of Soc. Services*, 867 P.2d 1 (Colo. App.1993), in which the court of appeals held that the district court's judgment, reversing

the decision of the administrative law judge (ALJ), was void. The court of appeals concluded that the district court was without jurisdiction to review the ALJ's decision because the petitioners' appeal was not timely filed within thirty days of the original effective date of the final agency action. For the reasons stated below, we reverse and remand to the court of appeals for further proceedings.

## I

Petitioners Bethesda Foundation of Nebraska, Inc. and MTC West, Inc. are the former and current owners and operators of several nursing homes in Colorado, including Bethany Care Center (Bethany). Bethany is a certified provider of long term care services for patients eligible to receive such services under the Colorado Medical Assistance Act (Medicaid), sections 26–4–101 to –704, 11B C.R.S. (1989 & 1993 Supp.). The Colorado Department of Social Services (Department), responsible for the administration of the Medicaid program, issues regulations establishing a daily rate of reimbursement for each certified facility, paid on a per-patient basis. This rate is based, in part, on the facility's aggregate cost of services and must be reasonable and adequate to meet the necessary costs of an efficient and economically operated facility. Regulation 8.440, 10 C.C.R. 2505–10 (1982).[1] A provider may challenge the rate set by the Department by requesting an administrative hearing known as an "aggrieved provider appeal." Regulation 8.050, 10 C.C.R. 2505–10 (1982). This hearing is conducted by an ALJ from the Department of Administration, whose decision is considered "final agency action" subject to judicial review. §§ 26–1–106(2), 11B C.R.S. (1989 & 1993 Supp.) & 24–4–106, 10A C.R.S. (1988 & 1993 Supp.).

In 1987, Bethany filed an aggrieved provider appeal challenging its Medicaid reimbursement rates and seeking retrospective and prospective increases in those rates.[2] A hearing was held before an ALJ in September and October of that year. On July 7, 1988, the ALJ issued a thirty-four page decision in which she concluded that although Bethany was not receiving reasonable and adequate reimbursement under the rates set by the Department, she lacked jurisdiction to grant the relief sought by Bethany.[3] The ALJ expressly noted that her decision was to become effective on July 15, 1988, three days after the date on the certificate of mailing.

Bethany decided to file a motion for reconsideration and correction of certain errors in the ALJ's findings. Because a motion for reconsideration does not automatically toll the thirty-day period for bringing an action for judicial review pursuant to section 24–4–106, and because it was unlikely that a motion for reconsideration could be filed and a decision rendered within that thirty-day period, the parties jointly filed a written stipulation on August 4, 1988, requesting the ALJ to enter an order postponing the effective date of her decision.

On August 11, 1988, within the thirty-day period for seeking judicial review, the ALJ entered an order postponing the effective date of her decision in this matter from July 15, 1988, to September 1, 1988. Later, on September 19, 1988, before expiration of the new thirty-day period, the ALJ entered a second order postponing the effective date of

1. Federal requirements for reimbursement of nursing homes are substantially similar. *See* 42 U.S.C. § 1396a(13) (1988); *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980) (noting that states which participate in the Medicaid program must comply with all federal statutes and regulations governing the program and reimbursement to participating providers).

2. Bethany claimed that under the rates set for it by the Department in 1985, it was unable to provide needed services and supplies to a segment of its resident Medicaid population known as "intensive maintenance" patients. Bethany asserted that although it was economically and efficiently operated, it would be forced to discharge and relocate these patients if its rates were not increased.

3. The ALJ specifically found, *inter alia,* that the Department's reimbursement classification for Bethany ("Class I") failed to guarantee "a reimbursement that is reasonable and adequate to meet the needs of all [of] Bethany's patients." She also concluded, however, that because the Department's classification of Bethany was in accordance with existing rules and regulations, she could not find that the Department's actions were "arbitrary and capricious."

the final agency decision until the date of the ALJ's decision on Bethany's motion to reconsider. On October 14, 1988, the ALJ issued an order amending the final agency decision to correct certain clerical errors and to clarify her decision. Bethany then timely filed a complaint in the district court pursuant to section 24–4–106, seeking judicial review of the amended agency decision.

The district court affirmed the ALJ's findings that Bethany was not receiving a reasonable and adequate rate of reimbursement and that an increase in the Medicaid rates was justified by the evidence. It reversed, however, the ALJ's conclusion that she was without jurisdiction to afford relief to Bethany and directed the Department and the Colorado State Board of Social Services to promptly undertake all necessary and reasonable steps to ensure that Bethany's rates comply with federal and state requirements.

The Department timely filed a notice of appeal with the court of appeals. At oral argument, the court of appeals raised, *sua sponte*, the question of whether the district court lacked jurisdiction to consider the ALJ's decision. After additional briefing on this issue, both parties argued to the court of appeals that the ALJ had properly postponed the effective date of the agency decision and thus the district court had jurisdiction to review that decision pursuant to section 24–4–106. Notwithstanding the parties' agreement on this issue, the court of appeals held that the ALJ had no authority to extend the effective date of her decision or to extend the statutory period for filing an action for judicial review. *Bethesda*, 867 P.2d at 3. Accordingly, the court of appeals dismissed the Department's appeal on the ground that the district court lacked jurisdiction to review the ALJ's decision. *Id.*

## II

Both parties contend that the court of appeals erred in concluding that it lacked jurisdiction to determine the merits of the Department's appeal. They first argue that the power to amend the effective date of a final agency action is encompassed within an ALJ's inherent power to reconsider its decisions. They argue, alternatively, that section 24–4–105(16)(b), 10A C.R.S. (1993 Supp.), a later-enacted amendment to the State Administrative Procedure Act (APA) which expressly recognizes the agency's power to change the effective date of a final agency action prior to the expiration of the thirty-day period for seeking judicial review, should be applied retroactively to this action. We find both arguments persuasive.

The decision of the ALJ in an aggrieved provider appeal "shall be the Final Agency Action on behalf of the Department...." Regulation 8.050.08, 10 C.C.R. 2505–10 (1984). Any agency order which constitutes "final agency action" must specify the date on which the action becomes effective. § 24–4–102(1), 10A C.R.S. (1988). The effective date of an agency decision is either the date on which the decision was mailed or "such later date as is stated in the decision." § 24–4–105(16), 10A C.R.S. (1988). Thus, it is within the discretion of the ALJ to decide, prior to issuing a decision which constitutes the final agency action in a particular matter, when that decision will become effective.

Prior to the adoption of section 24–4–105(16)(b), no statutory provision specifically addressed whether an ALJ's power to decide when her decision will become effective includes, by implication, the power to modify the original effective date where such modification is jointly requested by the parties. It is apparent, however, from the APA and general principles of administrative law that the ALJ did have the power to reconsider and modify her findings and decision during the thirty-day period for filing an action for judicial review. *See* § 24–4–106(2) (discussing "application for reconsideration" of a final agency action); *see also B.T. Energy Corp. v. Marcus*, 222 Neb. 207, 382 N.W.2d 616, 619 (1986) (holding that an administrative agency has the power to reconsider its decision until the aggrieved party institutes judicial review or the time period for such review has elapsed); *Boieru v. State Employment Relations Bd.*, 54 Ohio App.3d 23, 560 N.E.2d 801, 806 (1988) (same); *see also* 1 Charles H. Koch, Jr., *Administrative Law & Practice* § 6.76 (1985) (citing the "longstanding principle" that "the power to reconsider is inherent in the power to decide"). In our view, the

power to modify a decision upon a motion for reconsideration encompasses the power to modify the decision's effective date. This result is consistent with the express authority conferred upon the ALJ to "regulate the course of the hearing, set the time and place for continued hearings" and "control the subsequent course of the proceedings."[4] § 24–4–105(4).

 Furthermore, even if we were not convinced that the ALJ had the power to modify the effective date of her decision under the statutory scheme in effect in 1988, section 24–4–105(16)(b) applies retroactively to this case and expressly recognizes such power. Section 24–4–105(16)(b), which was enacted by the General Assembly on June 6, 1993, states that:

> Upon application by a party, and prior to the expiration of the time allowed for commencing an action for judicial review, the agency may change the effective date of a decision or an initial decision.

§ 24–4–105(16)(b), 10A C.R.S. (1993 Supp.); *see* Ch. 253, sec. 4, § 24–4–105(16)(b), 1993 Colo.Sess.Laws 1325, 1330 (S.B. 93–133).

"Unless a contrary intent is expressed in the statute, changes in procedural law are applicable to existing causes of action and not merely to those which accrue in the future." *People v. D.K.B.*, 843 P.2d 1326, 1332 (Colo. 1993); *Kardoley v. Colorado State Personnel Bd.*, 742 P.2d 934, 935 (Colo.App.1987). Even if we assume, *arguendo*, that the enactment of subsection 16(b) constitutes a "change" in the law, that change is properly characterized as procedural in nature. Unlike substantive provisions, which "create, eliminate or modify vested rights or liabilities," *D.K.B.*, 843 P.2d at 1331, subsection 16(b) is merely a timing provision which does not modify or otherwise limit the parties' statutory right to judicial review. *See Shaball v. State Comp. Ins. Authority*, 799 P.2d 399, 402 (Colo.App.1990) (noting that timing provisions for administrative actions are of-

ten considered "mere guides" for the conduct of proceedings, designed to promote "orderly procedure"). Therefore, section 24–4–105(16)(b) is applicable to the present cause of action. Under the plain language of that provision, the ALJ in this case had the authority to modify the effective date of her decision within thirty days of the prior effective date.

## III

Accordingly, we agree with the parties that the court of appeals erred in dismissing the Department's appeal on jurisdictional grounds. We reverse the judgment of the court of appeals and remand the case to that court for determination of the merits of the parties' claims on appeal.

VOLLACK, J., does not participate.

---

4. According to the parties, this result is also consistent with common practice in aggrieved provider hearings. Both the agency and the provider often will include a request for modification of the effective date in their motions for correction of clerical errors in the ALJ's decision or for reconsideration of substantive findings. This procedure assures that the parties will not have to choose between requesting reconsideration of an ALJ's decision and seeking judicial review within the thirty-day time period.